ORIGINAL



1   TIMOTHY L. ALGER (SBN 160303)
    FARSCHAD FARZAN (SBN 215194)
2   **PERKINS COIE LLP**
    Four Embarcadero Center, Suite 2400
3   San Francisco, California  94111
    Telephone:  (415) 344-7000
4   Facsimile:  (415) 344-7050
    Email:  TAlger@perkinscoie.com;
5   FFarzan@perkinscoie.com

6   Attorneys for Non-Party Twitter, Inc.

7

8                    **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**          **JSW**

10                          **SAN FRANCISCO**

11  **IN THE MATTER OF 30(b)(6)**        CV Case No.  **11   80 218MISC**
    **SUBPOENA TO TESTIFY AT**
12  **DEPOSITION AND TO PRODUCE**
    **DOCUMENTS ISSUED TO NON-**         (S.D.N.Y. Case No. CV 10-02730 WHP/MHD)
13  **PARTY TWITTER, INC. IN** *AGENCE*
    *FRANCE PRESSE V. MOREL,* **1:10-CV-**   **NON-PARTY TWITTER, INC.'S NOTICE**
14  **02730-WHP, PENDING IN THE**         **OF MOTION AND MOTION TO QUASH**
    **UNITED STATES DISTRICT COURT**      **NOTICE OF FRCP 30(b)(6) SUBPOENA**
15  **FOR THE SOUTHERN DISTRICT OF**      **TO TESTIFY AT DEPOSITION AND TO**
    **NEW YORK**                          **PRODUCE DOCUMENTS AND FOR**
16                                        **SANCTIONS; MEMORANDUM OF**
                                          **POINTS AND AUTHORITIES IN**
17                                        **SUPPORT**

18                                        Judge:    Hon. Jeffrey S. White
                                          Dept.:    Courtroom 11
19                                        Date:     October 21, 2011
                                          Time:     9:00 a.m.
20

21  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

22          Please take notice that on October 21, 2011, at 9:00 a.m., or as soon thereafter as this

23  matter may be heard, California resident and non-party Twitter, Inc. ("Twitter") will and does

24  move this Court for sanctions and an order quashing the 30(b)(6) Subpoena to Testify at

25  Deposition and Produce Documents served upon it by Defendant-Counterclaim Plaintiff Daniel

26  Morel ("Morel") in *Agence France Presse v. Morel,* 1:10-cv-02730-WHP, pending in the United

27  States District Court for the Southern District of New York.

28

1    Twitter makes this motion pursuant to this Notice of Motion, Motion and Memorandum of
2    Points and Authorities, and Declarations of Jeremy Kessel and John K. Roche in Support thereof,
3    filed concurrently; the files and records in this case; and any argument advanced at the hearing on
4    this Motion.

5

6    DATED: September 13, 2011                    **PERKINS COIE LLP**

7
                                                 By: _Farschad Farzan_
8                                                     Timothy L. Alger, Bar No. 160303
                                                      TAlger@perkinscoie.com
9                                                     Farschad Farzan, Bar No. 215194
                                                      FFarzan@perkinscoie.com
10
                                                 Attorneys for Twitter, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                          - 2 -
     NON-PARTY TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO QUASH

**TABLE OF CONTENTS**

**PAGE(S)**

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-PARTY TWITTER'S MOTION TO QUASH AND FOR SANCTIONS ......................................................1

I.     INTRODUCTION & SUMMARY ...................................................................................1

II.    FACTUAL BACKGROUND.............................................................................................2

III.    ARGUMENT....................................................................................................................7

     A.    Standard of Review...............................................................................................7

     B.    Morel's Demand for a Wide-Ranging Deposition on Twitter's Business Practices and for Expert Testimony is Unduly Burdensome....................................8

          1.    Topics 5-7 and 9-19 Should be Quashed as Unduly Burdensome, Overly Broad, Vague, Ambiguous, Irrelevant, Cumulative and/or Not Reasonably Calculated to Lead to the Discovery of Admissible Evidence............................................................................................8

          2.    Topics 1-4 and 8 Should Be Quashed as Overly Broad, Vague, and Ambiguous Demands for Improper Expert Testimony ..............................10

     C.    An Award of Sanctions is Appropriate Under Fed. R. Civ. P. 45(c)(1)................11

IV.    CONCLUSION................................................................................................................12

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4
5

*Datel Holdings Ltd. v. Microsoft Corp.,*
  712 F. Supp. 2d 974 (N.D. Cal. 2010) ........................................................................................9

6

*High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.,*
  161 F.R.D. 86 (N.D. Cal. 1995)................................................................................................8

7
8

*Kim v. NuVasive, Inc.,*
  Civil No. 11cv1370–DMS (NLS), 2011 WL 3844106 (S.D. Cal. Aug. 29, 2011) ................11

9
10

*Mattel, Inc. v. Walking Mountain Productions,*
  353 F.3d 792 (9th Cir. 2003) ............................................................................................8, 11

11
12

*Motise v. Parrish,*
  297 Fed. Appx. 149, 2008 WL 4672243 (3d Cir. 2008).........................................................10

13

**STATUTES**

14

17 U.S.C. §§ 101, 106 and 501 ........................................................................................................2

15

18 U.S.C. § 2701.............................................................................................................................1

16

Cal. Civ. Proc. § 2029....................................................................................................................3

17

**OTHER AUTHORITIES**

18

Fed. R. Civ. P. 26(b)(2)(C)(i) ......................................................................................................10

19

Fed. R. Civ. P. 45..........................................................................................................................8

20

Fed. R. Civ. P. 45(c)(1)........................................................................................................7, 8, 11

21

Fed. R. Civ. P. 45(c)(3)(A)(iv) .......................................................................................................7

22

Fed. R. Evid. 902(11)..........................................................................................................2, 5, 6, 11

23

24

25

26

27

28

- ii -

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
NON-PARTY TWITTER'S MOTION TO QUASH AND FOR SANCTIONS**

## I.   INTRODUCTION & SUMMARY

Twitter is a Delaware corporation with its principal place of business at 795 Folsom St., Suite 600, San Francisco, CA 94107. Twitter provides a popular social networking and communications platform for users to post information and stay connected through short messages. A message shared via the Twitter service is referred to as a "Tweet." These Tweets are posted to a user's profile or blog, sent to followers, and are searchable by Twitter's search engine.

Morel is a photographer currently engaged in a copyright lawsuit in the Southern District of New York against Agence France Presse ("AFP") and other news agencies regarding their alleged use, without consent, of photographs that Morel posted to his Twitter account in the aftermath of the devastating earthquake that struck southern Haiti on January 12, 2010. Twitter is not a party to Morel's lawsuit.

Since April 2011, Morel has served Twitter with a number of subpoenas demanding documents related to his own Twitter account and those of other individuals allegedly involved in AFP's use of Morel's Haiti photographs. Morel's first subpoena was issued out of the wrong jurisdiction—the Southern District of New York—which Morel's counsel acknowledged only after Twitter raised repeated objections. Morel's subsequent subpoenas, issued out of this Court, demanded a great deal of information (1) that was available to Morel simply by issuing a discovery request directly to the users themselves, or (2) Twitter is prohibited from producing under the federal Stored Communications Act, 18 U.S.C. § 2701, *et seq.* ("SCA"). The subpoenas also listed incorrect information for at least one account that made it impossible for Twitter to respond in any meaningful fashion—a fact that Twitter has repeatedly explained to Morel's counsel. Nevertheless, Twitter has cooperated with Morel and produced documents in response to his subpoenas to the extent permitted by applicable law, and has patiently engaged in numerous discussions with Morel's counsel to answer questions about Twitter's documents.

1    Nevertheless, under the pretense that Twitter's document production is inadmissible

2    absent foundational testimony from Twitter, Morel has demanded that Twitter be put to the

3    burden and expense of designating one or more corporate representatives to explain Twitter's

4    business, its practices, its technology, and its data. None of this is at issue in the litigation.

5    Morel also has demanded that Twitter provide one or more corporate representatives to

6    provide expert testimony on social media and on the nature and format of Twitter's data and

7    document production. Twitter has offered Morel a declaration under Fed. R. Evid. 902(11) that

8    provides the required factual predicate for admissibility of its document production, and that also

9    provides answers to some of Morel's foundational questions—even though this information is

10   available to the public (and to Morel's expert and other witnesses) from Twitter's Web site.

11   Still unsatisfied, Morel continues to insist on Twitter's live testimony in a wide-ranging

12   deposition into Twitter's business. This overreaching is simply not justified in a day when

13   Internet-based companies such as Twitter must regularly respond to dozens of subpoenas from

14   government, criminal prosecutors and defendants, and civil litigants.

15   As a non-party with no interest in the underlying litigation, Twitter should not have to

16   bear the significant burden and expense of preparing one or more corporate representatives to

17   authenticate documents (something that can be done by declaration under the Federal Rules of

18   Evidence) and provide free expert testimony on a host of irrelevant and proprietary topics.

19   Accordingly, Twitter respectfully requests that the Court quash Morel's 30(b)(6)

20   Deposition Subpoena in its entirety and award Twitter a portion of its attorneys' fees expended on

21   this matter.

22                          **II.      FACTUAL BACKGROUND**

23   On March 26, 2010, AFP filed a complaint in the United States District Court for the

24   Southern District of New York for, *inter alia*, a declaratory judgment that AFP has not infringed

25   upon Morel's copyrights in certain photographs he allegedly posted on Twitter. *Agence France*

26   *Presse v. Morel,* 1:10-cv-02730-WHP, Complaint at ¶¶ 1-6 [Dkt. No. 1]. Morel responded with a

27   counterclaim against AFP, Getty Images, Inc., CNN, ABC, and CBS, alleging that they have used

28   Morel's photographs without his consent in violation of the Copyright Act of 1976, 17 U.S.C. §§

- 2 -

1  101, 106 and 501 et. seq. *Agence France Presse v. Morel,* 1:10-cv-02730-WHP, Second

2  Amended Answer, Affirmative Defense and Counterclaims at ¶ 37 [Dkt. No. 29].

3        On April 18, 2011, Morel issued a subpoena duces tecum to Twitter out of the Southern

4  District of New York for production of documents, returnable on May 23, 2011, "relating to" the

5  Twitter accounts of Vincent Amalvy, Lisandro Suero, Ben Fathers and Morel.[1] *See* Ex. 1 to

6  Declaration of Jeremy Kessel ("Kessel Decl."). The subpoena also called for Twitter's deposition

7  testimony, but was accompanied by a letter stating that "we are interested in document production

8  only at this point." *Id.*

9        On May 5, 2011, Twitter notified Morel's counsel that

10        As communicated in response to your original request via email on
      May 4, 2011, Twitter, Inc. only has offices in San Francisco,
11        California, and will only respond to legal process in actions pending
      outside of California that are issued by one of the Superior Courts
12        of California pursuant to the Interstate and International
      Depositions and Discovery Act, Cal. Civ. Proc. § 2029, or the
13        United States District Court for the Northern District of California.

14  *See* Ex. 2 to Kessel Decl.

15        On May 23, 2011, in response to Twitter's repeated jurisdictional objections, Morel's

16  counsel curtly agreed to withdraw the subpoena and reissue it out of the proper jurisdiction in

17  California, stating, "We are retaining California counsel so save your breath."[2] *See* Ex. 1 to

18  Declaration of John K. Roche ("Roche Decl.").

19        On June 22, 2011, Morel issued another subpoena to Twitter demanding records from the

20  Twitter accounts @vamaly, @34benjie, @photomorel and @LisandroSuero. *See* Ex. 3 to Kessel

21  Decl. As with the first subpoena, the June 22nd subpoena called for Twitter's deposition on July

22  12, 2011, but did not attach a list of 30(b)(6) deposition topics.

23        On July 11, 2011, Twitter sent Morel's counsel an email that stated, "As indicated in our

24  previous communications, Twitter will produce records via email in lieu of personal testimony at

25  _____

26  [1] Amalvy is allegedly a photo editor from AFP; Suero was allegedly the person primarily involved in pirating Morel's photographs; and Fathers is allegedly an AFP employee who solicited photographs from Morel. *Agence France Presse v. Morel,* 1:10-cv-02730-WHP, Second

27  Amended Answer, Affirmative Defense and Counterclaims at ¶¶ 73-74, 82, 88-93 [Dkt. No. 29].

28  [2] The snide, uncivil tone of this email was a precursor for many similar communications, as shown below.

1    your offices." *See* Ex. 4 to Kessel Decl.

2        On July 12, 2011, Morel's counsel disputed that Morel had agreed to forego a deposition –

3    despite the failure to attach any 30(b)(6) deposition topics. He noted that

4                It is my understanding after speaking with [Twitter in-house
                counsel], that the documents responsive to the subpoena will be
5                produced by Twitter electronically at some point today. The parties
                will attempt to reach a stipulation concerning the authenticity of
6                those documents, however, should we not be able to come to an
                agreement, Mr. Morel is reserving his right to proceed forward with
7                the deposition of Twitter's custodian of records at our office at a
                later date.

8

9    *Id.* (emphasis added).

10       That same day, Twitter produced records to Morel's counsel regarding the Twitter

11   accounts @vamalvy and @34benjie, and further stated, "it appears your request for user

12   information regarding @lisandrosuero may be for the incorrect user. Please verify that you are

13   seeking records by reviewing the account holder's public account here:

14   twitter.com/lisandrosuero." *See* Ex. 5 to Kessel Decl.  Twitter did not produce records for

15   @photomorel because Twitter was under the impression that Morel would be requesting his own

16   information from Twitter through his Twitter account. *See* Kessel Decl. ¶ 6.

17       On August 15, 2011, Morel issued Twitter a 30(b)(6) Subpoena to Testify at Deposition

18   and to Produce Documents returnable on August 26, 2011 that called for duplicative documents

19   regarding Twitter accounts @vamalvy, @34benjie, @lisandrosuero, and @photomorel, in

20   addition to a list of deposition topics covering a broad range of Twitter's business practices. *See*

21   Ex. 6 to Kessel Decl.

22       On August 19, 2011, Twitter produced records to Morel's counsel regarding the Twitter

23   account @photomorel. *See* Ex. 7 to Kessel Decl.  Twitter also notified Morel's counsel that

24                With regards to @lisandrosuero, as previously discussed, the
                current holder of that username does not appear to be the subject of
25                your discovery investigation. Upon further investigation, we
                believe the account you seek is currently using the username
26                @LsueroE.
                In order to produce records regarding @LsueroE, we will need to
27                send a notice of your request to the user and process per our stated
                policy. As previously noted, we are not able to provide contents of

28

- 4 -
NON-PARTY TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO QUASH

1                       communication for this account without the lawful consent of the
user.

2

3    *Id.*

4          On August 22, 2011, Twitter's inside counsel spoke with Morel's local counsel, Jaime

5    Touchstone, and attempted to answer any questions regarding Twitter's document production.

6    *See* Kessel Decl. ¶ 9.

7          On August 25, 2011, Twitter's outside counsel spoke with Morel's counsel, Barbra

8    Hoffman and Jaime Touchstone, regarding Morel's 30(b)(6) deposition notice. *See* Roche Decl. ¶

9    3. Ms. Hoffman stated during this discussion that she "hates social networks" and does not

10    understand them. *Id.* Ms. Hoffman further indicated that her primary concerns were (1)

11    authenticating the documents produced by Twitter, (2) confirming that the production consists of

12    all responsive documents, (3) understanding what happens with deleted content, (4)

13    understanding the issues around the @lisandrosuero account, and (5) an explanation of the default

14    profile picture (or avatar) given to Twitter users upon creation of their account and any changes

15    thereto. *Id.* Morel's counsel agreed that the deposition would not go forward as scheduled on

16    August 26, 2011, and Twitter's counsel agreed to a tentative rescheduling on September 2, 2011

17    if Morel had reasonable objections to a proposed declaration that Twitter would provide under

18    Fed. R. Evid. 902(11). *Id.*

19          Later that day, Twitter's counsel confirmed via email that Twitter would prepare a

20    declaration under Fed. R. Evid. 902(11) that responded to their authentication concerns and

21    provided responses to the other issues identified during the call in an effort to save all parties

22    from the burden of a deposition. *See* Ex. 2 to Roche Decl.

23          Ms. Hoffman responded to this email as follows:

24                       Dear all. This is not helpful. Jaime please brin [sic] a motion to
compel. I will submit a declaration of how we have been jeked [sic]

25                       around since April. That we submitted the correct information, that
Amalvy and Fathers released their stored data, that mr [sic] Morel

26                       released his data on the 22 of june [sic] and that we requested
Suero's data and information as well. Please ask for sanction [sic]

27                       and tell me if Monday is ok for the declaration. We are wasting
time and money with mr [sic] Roche. That's it mr [sic] Roche see

28                       you incourt [sic]. *Id.*

NON-PARTY TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO QUASH

1    Minutes later, Ms. Hoffman wrote, "Sorry please disregard the prior email which should

2    be deleted.. [sic] We will wait for your production on Monday. Thank you." *Id.*

3    On August 29, 2011, Twitter provided its declaration to Morel's counsel and noted that if

4    the declaration was insufficient, Morel's counsel should "identify [their] concerns with specificity

5    so we can determine how to best resolve them." *See* Ex. 3 to Roche Decl.

6    On September 2, 2011, Twitter's counsel spoke with Morel's counsel regarding Twitter's

7    declaration. *See* Roche Decl. ¶ 6. Morel's counsel declined to note any specific deficiencies in

8    Twitter's declaration, but stated that a deposition was still necessary in order to decipher certain

9    documents and other Twitter content. *Id.* Twitter's counsel reiterated Twitter's concern about

10   the breadth of the topics listed in the deposition and asked that Morel's counsel make an effort to

11   narrow the topics to targeted questions regarding Twitter's document production. *Id.* Morel's

12   counsel agreed to do so, and further stated that they would like to reschedule the deposition for

13   September 13, 2011. *Id.* Twitter's counsel stated that he would discuss the issue of whether

14   Twitter could agree to sit for a deposition upon receipt of Morel's narrowed deposition topics. *Id.*

15   Well after the close of business on September 2, the Friday before the Labor Day holiday

16   weekend, Morel's counsel forwarded a "narrowed" set of deposition topics that did little to

17   narrow the previous list of topics aside from adding the phrase "as they pertain to the Documents

18   Produced by Twitter" to most of the deposition topics. *See* Ex. 4 to Roche Decl. This change

19   actually made the topic descriptions indecipherable, given that the topics extended beyond the

20   Twitter document production.

21   On Friday, September 9, 2011, Twitter notified Morel's counsel that their deposition

22   topics were still vastly overbroad and that their primary concerns of authentication, completeness,

23   and understanding of the features of Twitter's document production had already been satisfied by

24   Twitter's declaration under Fed. R. Evid. 902(11). *See* Ex. 5 to Roche Decl.

25   Indeed, Morel's counsel have now confirmed that they were never willing to agree to a

26   declaration (despite the propriety of it here), and were gunning for a court hearing. After failing

27   to meaningfully narrow the scope of the deposition they sought, Ms. Hoffman fired off another

28   "see you in court" email on September 10th. *See* Ex. 6 to Roche Decl. ("We have dealt with

- 6 -

NON-PARTY TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO QUASH

1 twitter in good faith and at great cost we require that you show up or risk the costs and
2 consequences of failure to do so").

3     Ms. Hoffman then reversed course on Monday, September 12, 2011 by demanding a
4 revised declaration from Twitter in order to "see whether it will be acceptable to counsel for
5 CNN, Getty and AFP." *See* Ex. 5 to Roche Decl. However, Morel's counsel unreasonably
6 demanded that Twitter draft and serve this revised declaration by 9:00 a.m. Pacific time that same
7 day. *Id.* By noon Pacific that same day, Twitter responded with a revised declaration that
8 addressed topics 16 and 19 of Morel's revised Schedule A. *Id.* Within seven minutes of
9 receiving this revised declaration – and certainly without determining "whether it will be
10 acceptable to counsel for CNN, Getty and AFP" – Morel's counsel categorically rejected the
11 revised declaration. *Id.*

12     At the same time, Morel's counsel notified all other counsel that the deposition would
13 proceed as scheduled even after Twitter had informed Morel that it would not. *See* Ex. 7 to
14 Roche Decl. This could only have been done in the hope of causing other parties in the case to
15 expend effort and expense to attend the deposition, and thereby rally others to support Morel's
16 case for "the costs and consequences" Twitter would suffer if it did not go forward with the
17 deposition on Morel's terms.

18     In light of Morel's intransigence and continued demands for a deposition that is
19 unnecessary, unduly burdensome, harassing, and seeks to delve into a broad array of wholly
20 irrelevant and proprietary topics, Twitter brings this motion to quash.

21 **III.   ARGUMENT**

22 **A.   Standard of Review**

23     Fed. R. Civ. P. 45(c)(3)(A)(iv) requires the Court to quash a subpoena that subjects a
24 person to undue burden. "A party or attorney responsible for issuing and serving a subpoena
25 must take reasonable steps to avoid imposing undue burden or expense on a [nonparty] subject to
26 the subpoena." Fed. R. Civ. P. 45(c)(1). "The issuing court must enforce this duty and impose an
27 appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a
28 party or attorney who fails to comply" *Id.* Hence, "the Ninth Circuit has long held that

- 7 -

1   nonparties subject to discovery requests deserve extra protection from the courts." *High Tech*

2   *Medical Instrumentation, Inc. v. New Image Industries, Inc.,* 161 F.R.D. 86, 88 (N.D. Cal. 1995).

3   This is particularly so where intellectual property is sought from a non-party witness, and where

4   necessary to prevent "the use of subpoenas to compel the giving of evidence and information by

5   unretained experts." *Mattel, Inc. v. Walking Mountain Productions*, 353 F.3d 792, 814 (9th Cir.

6   2003) (quoting 1991 advisory committee notes to Fed. R. Civ. P. 45).

7   **B.    Morel's Demand for a Wide-Ranging Deposition on Twitter's Business**
     **Practices and for Expert Testimony is Unduly Burdensome**

8

9                **1.    Topics 5-7 and 9-19 Should be Quashed as Unduly Burdensome, Overly**
                  **Broad, Vague, Ambiguous, Irrelevant, Cumulative and/or Not**
10                **Reasonably Calculated to Lead to the Discovery of Admissible Evidence**

11          Topics 5-7 demand wide-ranging testimony about Twitter's "data collection policies and

12   procedures for Twitter user accounts," its "data storage policies and procedures for Twitter user

13   accounts," and its "data archive/retention policies and procedures for Twitter user accounts"

14   regarding "documents which Twitter failed to produce." *See* Ex. 4 to Roche Decl.  These topics

15   are essentially identical to topics 4-7 in Morel's original deposition notice. *See* Ex. 6 to Kessel

16   Decl.  Twitter is at a loss to understand how it could even begin to identify a representative to

17   testify as to unidentified documents it "failed to produce."  Moreover, Twitter's "data collection

18   policies and procedures," its "data storage policies and procedures," and its "data

19   archive/retention policies and procedures" are exceedingly broad topics that cover a host of

20   proprietary information that Twitter should not be forced to divulge, in a case in which Twitter

21   has no stake, and where those policies have no apparent relevance.  They also have no bearing on

22   whether Twitter produced responsive documents relevant to the claims in this litigation.

23          Topic 9 similarly demands a host of proprietary information regarding the "relationship

24   between the Twitter interface and TwitPic." *See* Ex. 4 to Roche Decl.  This broad and ambiguous

25   request has no apparent relevance.  Moreover, in light of the ambiguity of this request, Twitter

26   cannot begin to ascertain how it could properly prepare one or more corporate representatives to

27   cover this topic, which is a burden it should not have to bear in the first instance given its lack of

28   interest or involvement in this matter.

- 8 -

1    Topic 10 demands testimony regarding the "process by which a user can close his/her

2  Twitter account and re-open the same or a different Twitter account with the same or a different

3  user name" as this process relates to documents produced by Twitter and unspecified "documents

4  which Twitter failed to produce." *See* Ex. 4 to Roche Decl. Twitter is once again at a loss to

5  understand how it could identify a representative to testify as to unidentified documents it "failed

6  to produce." Moreover, Twitter has already offered a declaration that explains the policy

7  described in its public documentation, available at https://support.twitter.com/articles/14609,

8  whereby a Twitter user may change his or her username at any time to any other available

9  username. *See* Ex. 5 to Roche Decl. Morel has failed to describe in any fashion why Twitter's

10  declaration explaining its publicly available policies, of which the Court can take judicial notice,[3]

11  is insufficient to describe this process.

12    Topics 11-15 also demand wide-ranging testimony about Twitter's "collection, storage,

13  retention and archive of" content and user information, as well as its "'open ecosystem' with

14  respect to uploading and storage of visual content." *See* Ex. 4 to Roche Decl. Twitter believes

15  that these requests go primarily to Morel's concerns about the completeness of Twitter's

16  document production, *i.e.,* whether Twitter has withheld anything from Morel. Twitter has

17  already attested to the completeness of its production and its publicly available policies regarding

18  deleted and deactivated accounts, available at https://support.twitter.com/articles/15358. *See* Ex.

19  5 to Roche Decl. Any further demand for testimony on these topics is an unwarranted demand

20  for non-party Twitter's proprietary information, almost all of which has no relevance to Morel's

21  copyright suit.

22    Topic 16 demands testimony regarding the "'key' formula/code detailed at the end of

23  every Twitter text file contained in the Documents Produced by Twitter as detailed in the

24  Documents Produced by Twitter, and how or whether that code is relevant to translating the

25  Documents Produced by Twitter into readable text for the ordinary layperson." Topic 19

26  demands information regarding the timestamps attributed to Twitter content. To the extent these

27

28  [3] *Datel Holdings Ltd. v. Microsoft Corp.,* 712 F. Supp. 2d 974, 983-84 (N.D. Cal. 2010) (taking judicial notice of online software license and terms of use).

- 9 -

1  requests have any relevance to the underlying case, Twitter has also responded to these requests
2  in its declaration. *See* Ex. 5 to Roche Decl. Indeed, Twitter has already explained in its
3  production emails of July12th and August 19th that all its records are maintained in Greenwich
4  Mean Time for time zone purposes. *See* Exs. 5 and 7 to Kessel Decl. There is no cause for
5  Twitter to sit for a deposition regarding these tangential issues. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)
6  (the court must limit the frequency or extent of discovery if the discovery sought can be obtained
7  from some other source that is more convenient, less burdensome, or less expensive); *Motise v.*
8  *Parrish*, 297 Fed. Appx. 149, 153, 2008 WL 4672243, at *4 (3d Cir. 2008) (unpublished) (citing
9  Fed. R. Civ. P. 26(b)(2)(C)(i) and upholding district court's decision to permit a party to submit a
10 declaration in lieu of a deposition).

11       Topic 17 demands testimony regarding Twitter's "policies and procedures concerning
12 Twitter's response to and compliance with subpoenas for the production of documents and
13 records." *See* Ex. 4 to Roche Decl. This is a clearly burdensome request for information
14 protected by the attorney-client privilege and work product doctrine that has no potential
15 relevance to the underlying case.

16       Finally, Topic 18 demands an explanation of the default profile picture (or avatar) given to
17 Twitter users upon creation of their account and any changes thereto. *See* Ex. 4 to Roche Decl.
18 This issue has already been addressed in Twitter's 902(11) declaration, also based on Twitter's
19 publicly available documentation at http://blog.twitter.com/2010/09/better-twitter.html, and
20 Morel has failed to describe in any fashion why Twitter's declaration is insufficient to describe
21 this process. *See* Ex. 5 to Roche Decl.

22       **2.  Topics 1-4 and 8 Should Be Quashed as Overly Broad, Vague, and**
23            **Ambiguous Demands for Improper Expert Testimony**

24       Topics 1-4 of Morel's amended 30(b)(6) deposition topics demand testimony from Twitter
25 "in a manner to be understood by a layperson not familiar with Twitter, the Twitter content
26 contained in" Exhibits 1-4 to Morel's amended deposition topics. *See* Ex. 4 to Roche Decl.
27 Similarly, topic 8 demands "a description and indication in layperson's language of the symbols"
28 contained in the "text format in which Twitter user data is collected, stored, retained and

- 10 -

1  archived." *Id.* In effect, these are improper demands for free expert testimony on the nature of

2  social media and text files.

3      If Morel's counsel believes that jurors will be unable to comprehend text files or the

4  content generated by social media Web sites, the appropriate course would have been to retain an

5  expert witness to explain these issues to the jury. Counsel's failure to do so does not mean that

6  non-party Twitter should now be subjected to the burden and expense of preparing potentially

7  multiple corporate representatives to answer unbounded questions about the "content contained

8  in" the exhibits attached to Morel's revised schedule, or the nature of text file documents, "in a

9  manner to be understood by a layperson not familiar with Twitter." *Mattel*, 353 F.3d at 814

10  (upholding district court order quashing subpoena for improper expert testimony from non-party);

11  *Kim v. NuVasive, Inc.*, Civil No. 11cv1370–DMS (NLS), 2011 WL 3844106, at *4-5 (S.D. Cal.

12  Aug. 29, 2011) (quashing demand for expert testimony from a non-party in order to protect expert

13  from being required to provide expert advice or assistance without proper compensation).

14  **C.    An Award of Sanctions is Appropriate Under Fed. R. Civ. P. 45(c)(1)**

15      As noted, litigants must take reasonable steps to avoid imposing undue burden or expense

16  on nonparties, and the Courts "must enforce this duty and impose an appropriate sanction—which

17  may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to

18  comply." Fed. R. Civ. P. 45(c)(1). As described above, Twitter has cooperated with Morel and

19  produced documents in response to his multiple subpoenas to the extent permitted by applicable

20  law, and has patiently engaged in numerous discussions with Morel's counsel to answer questions

21  about Twitter's documents. Twitter has also provided Morel with a declaration under Fed. R.

22  Evid. 902(11) that addresses Morel's concerns regarding the authentication, completeness, and

23  other objective and indisputable issues regarding Twitter's document production. Nevertheless,

24  Morel's counsel has repeatedly berated Twitter with snide, threatening and uncivil

25  communications that have done nothing to narrow the areas of disagreement or avoid imposing

26  undue burden or expense on non-party Twitter. Morel has also made little, if any, effort to

27  narrow the scope of his vastly overbroad deposition topics. Twitter therefore requests that the

28  Court sanction Morel or his counsel for this behavior and award Twitter $5,000 in attorney's fees,

- 11 -

NON-PARTY TWITTER, INC.'S NOTICE OF MOTION AND MOTION TO QUASH

Case 3:11-mc-80218-JSW   Document 1   Filed 09/13/11   Page 16 of 16

1    which is less than Twitter has actually expended in its good faith efforts to resolve this dispute

2    and in bringing this motion. *See* Roche Decl. ¶ 11.

3                                IV.    CONCLUSION

4         For the reasons stated, Twitter respectfully requests that the Court quash Morel's 30(b)(6)

5    Subpoena in its entirety and award Twitter a portion of its attorneys' fees expended on this

6    matter.

7

8    DATED:  September 13, 2011                    **PERKINS COIE LLP**

9
                                                    By:  _Farschad Farzan_
10                                                       Timothy L. Alger, Bar No. 160303
                                                         TAlger@perkinscoie.com
11                                                       Farschad Farzan, Bar No. 215194
                                                         FFarzan@perkinscoie.com
12
                                                    Attorneys for Twitter, Inc.
13

14

15   71994-0001/LEGAL21712174.1

16

17

18

19

20

21

22

23

24

25

26

27

28
                                      - 12 -